## HAALAND v. ATTORNEY GENERAL OF THE UNITED STATES.

No. 1249.

District Court, D. Maryland.

Nov. 26, 1941.

Webster C. Tall and George W. Della, III, both of Baltimore, Md., for petitioner.

Bernard J. Flynn, U. S. Atty., and T. Barton Harrington, Asst. U. S. Atty., both of Baltimore, Md., for the Attorney General.

COLEMAN, District Judge.

This is a proceeding in the nature of a suit against the Attorney General of the United States to obtain a declaratory judgment that the petitioner, Ole Haaland, is a citizen of the United States, brought pursuant to the provisions of Section 503 of the Nationality Act of 1940, 8 U.S. C.A. § 903.

The material and undisputed facts are as follows: Petitioner's father, Christian O. Haaland, was born in Norway in 1872, and emigrated to the United States in 1892 where he became, on August 27th, 1897, a naturalized citizen through naturalization proceedings in the State of Iowa. On October 7th, 1905, the father married one Olava Hanen in Iowa, she also having been born in Norway. Christian O. Haaland and his wife returned to Norway in November, 1907, where they have ever since resided, never having returned to the United States. In Norway, on October 6th, 1908, their son, Ole Haaland, the present petitioner, was born, and he resided there with his parents until May, 1929, that is to say, until a few months before he reached the age of twenty-one years, when he came to the United States upon a United States passport, issued to him by the United States Consul at Oslo, Norway, after having recorded,

as he testified and which is not denied by the Government although not supported by documentary proof, his intention to become a resident and to remain a citizen of the United States and after having taken the oath of allegiance to the United States. Since his arrival in the United States on May 25th, 1929, the petitioner has followed the sea as his means of livelihood, but when not so engaged has resided in New York City, and more recently in Baltimore. On July 8th, 1937 there was issued to him by the United States Department of Commerce, Bureau of Navigation and Steamboat Inspection, a license as chief engineer of ocean steam vessels of unlimited tonnage, which certificate recites the facts in connection with petitioner's parentage and birth, as above stated.

Subsequently, that is on or about November 19th, 1938, the petitioner, desiring to visit his parents in Norway, applied to the Department of State for an American passport for that purpose, but this was denied him on the ground that he had not established to the Department's satisfaction, his American citizenship. Thereupon, because of a deep filial desire to see his parents, he applied for and obtained a Norwegian permit on which he went to Norway and returned to the United States on February 19th, 1939, as an alien immigrant. He has since taken out his first naturalization papers and also has registered as an alien under the Alien Registration Act, 1940, 8 U.S.C.A. §§ 451–459, which action, as he has explained, he took because of his deep-seated desire to establish his right to be declared an American citizen, and because no other avenue appeared to be open to him. After his unsuccessful efforts to obtain a favorable ruling from the Department of State, the petitioner presented his case formally to the Department of Justice (the Immigration and Naturalization Service of The United States having been placed under the Department of Justice by the Nationality Act of 1940); a hearing was had, and on June 24th, 1941, the Department notified him of its conclusion that he "is to be regarded as an alien." Thereupon, petitioner brought this proceeding.

The position of the Government as set forth in the answer filed on behalf of the Attorney General and assumed at the hearing, is that at the time of petitioner's birth in Norway, his father was not an American citizen, having returned to Norway in 1907 with the intention of resuming his residence in that country and with no intention of returning to the United States; and that therefore petitioner has never been an American citizen, because such status in his case was absolutely conditioned upon the father being an American citizen at the time of petitioner's birth.

The Government relies upon the Act of March 2nd, 1907, c. 2534, §§ 6 and 7, 8 U.S.C.A. § 6, and upon Article 3, of the Protocol to the Treaty between the United States, Sweden and Norway, of May 26th, 1869, 17 Stat. 809, this Treaty being one of a series of treaties with similar terms which our Government negotiated with various countries between 1868 and 1872. The statute is as follows: "All children born out of the limits and jurisdiction of the United States, whose fathers may be at the time of their birth citizens of the United States, are declared to be citizens of the United States; but the right of citizenship shall not descend to children whose fathers never resided in the United States. All such children who continue to reside outside the United States shall, in order to receive the protection of this Government, be required upon reaching the age of eighteen years to record at an American consulate their intention to become residents and remain citizens of the United States and shall be further required to take the oath of allegiance to the United States upon attaining their majority. Duplicates of any evidence, registration, or other acts required by this section shall be filed with the Department of State for record."

The Treaty provision is as follows: "It is further agreed that if a Swede or Norwegian, who has become a naturalized citizen of the United States, renews his residence in Sweden or Norway without the intent to return to America, he shall be held by the government of the United States to have renounced his American citizenship.

"The intent not to return to America may be held to exist when the person so naturalized resides more than two years in Sweden or Norway."

The Government contends that both of the aforegoing apply to the present situation, the statute, because the petitioner was born outside of the United States after his father had been naturalized and because there was no other statute in ef-

fect at the time of petitioner's birth embracing such a situation; and the Treaty, because it obviously covers a status such as that of the petitioner's father, since he had renewed his residence in Norway. While the statute was amended in 1933 and 1934 (Executive Order 6166, § 14, June 10, 1933, and Act of May 24, 1934, chap. 344, § 1, 8 U.S.C.A. § 6), and was repealed by the Nationality Act of 1940, 8 U.S.C.A. §§ 601(c), 713 and 807, that Act expressly declares that nationality already lawfully acquired is not lost, and nationality already lost is not restored, by the repeal, 8 U.S.C.A. § 904. And that Act further provides, Section 347, 8 U. S.C.A. § 747, that it shall not be construed "to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalization or of citizenship, or other document or proceeding which shall be valid at the time this chapter shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any act, thing, or matter, civil or criminal, done or existing, at the time this chapter shall take effect; but as to all such prosecutions, suits, actions, proceedings, acts, things, or matters, the statutes or parts of statutes repealed by this chapter, are hereby continued in force and effect," and by Section 410, 8 U.S.C.A. § 810, that nothing contained in it "shall be applied in contravention of the provisions of any treaty or convention to which the United States is a party upon October 14, 1940."

■ Thus, if we assume that the Act of March 2nd, 1907, as well as the Treaty controls, as we believe we must, for the reasons which we will set forth fully in a subsequent part of this opinion, the question in the present proceeding, upon the answer to which mainly depends the petitioner's right to be successful in this proceeding, is this: Was the petitioner's father a citizen of the United States at the time of the petitioner's birth? He was such by naturalization prior to his return to Norway in 1907, less than a year before his son, the petitioner, was born. Also, there is no doubt but that petitioner's father has lost his American citizenship by his long and uninterrupted resumption of residence in Norway. When did he first lose his citizenship? Whether he had already lost it at the time his son was born is a question of fact to be determined by his intentions. As the Treaty above quoted provides, there is a presumption that the father did not intend to return to America after he had resided more than two years in Norway. However, he had resided there less than one year when his son was born. The Government, nevertheless, maintains that petitioner's father must be considered to have renounced his naturalization in the United States upon his return to Norway.

■ At this stage of the inquiry it is pertinent to make note of another provision contained in the statute of March 2nd, 1907, c. 2534, §§ 2 and 7, 8 U.S.C.A. § 17, which is similar to the Treaty provision quoted, and is as follows: "When any naturalized citizen shall have resided for two years in the foreign State from which he came, or for five years in any other foreign State it shall be presumed that he has ceased to be an American citizen, and the place of his general abode shall be deemed his place of residence during said years. Such presumption may be overcome on the presentation of satisfactory evidence to a diplomatic or consular officer of the United States, under such rules and regulations as the Department of State may prescribe. Duplicates of any evidence, registration, or other acts required by this section shall be filed with the Department of State for record." Under the Nationality Act of 1940, Sections 401, 404 and 409, 8 U.S.C.A. §§ 801, 804 and 809, as amended October 16, 1941, this provision has been repealed, effective two years after the date of enactment of that law, which was October 14, 1940; so there is no longer a statutory presumption of expatriation by lapse of time, and a person who has become a national by naturalization loses his nationality by residing for at least two years in a foreign country of which he was formerly a national or in which he was born, if he acquired through such residence the nationality of such foreign country by operation of the law thereof; or merely by residing continuously for three years in such country. 8 U.S.C.A. § 804 (a) (b). But the presumption would still apply to the petitioner's father had he, for example, not made a declaration of intention, and had instituted the present proceeding, because commenced before October, 1941.

Relying upon the applicable statutory and Treaty provisions to which we have referred, the Government maintains that the burden is upon the petitioner to establish by affirmative proof, that petitioner's father,

upon his arrival in Norway in 1907, had not renounced his intention of returning to the United States and establishing his residence there, and that the petitioner has not sustained this burden.

In support of the Government's position, there was introduced at the hearing copy of an affidavit made by petitioner's father on March 13th, 1929, that is, just a few months before petitioner became of age and only about two months before petitioner returned to the United States, this affidavit being made in Stavanger, Norway, before the American Consul in that place. It does not appear from the testimony or documents adduced at the hearing, just what was the precise reason for making this affidavit. After reciting the facts, most of which have already been referred to herein, respecting his status and place of residence before he returned to Norway, the father stated "that he left the United States in November, 1907 and has since permanently resided at Kvitsoy, near Stavanger, Norway, for the purpose of residence; that he does not expect to return to the United States permanently to reside inasmuch as he has established a fixed domicile in Norway and does not desire to make an application for a passport or registration." Because of the war in Europe, and the German occupation of Norway, counsel for the Government in the present case have explained the great difficulty, if not impossibility, of obtaining additional proof in support of the Government's petition, for example, as by further affidavit from petitioner's father who, as far as is known, is still alive in Norway.

In reply to the aforegoing, counsel for petitioner take the position that the presumption of loss of citizenship created by the statutes and the Treaty is not to be interpreted as arising until the stipulated two-year period has expired; in other words, that whereas a given condition, shown to exist at a given time, may be presumed to have continued, there is not, on the other hand, any presumption that it existed previous to the given time. In short, it is petitioner's contention that the language which creates the presumption must be strictly construed in favor of the petitioner since no presumption is created at all against the petitioner himself, but merely against his father; and that even though there is some evidence in the present case, especially the father's affidavit, just referred to, made in 1929, with respect to his intended domicile, which might, prima facie, indicate that the father never expected to return to the United States once he had left it in 1907, nevertheless, since this affidavit was made twenty-two years later, it should not be treated as a bar to petitioner, because, by the terms of both statute and Treaty, as late as 1909, that is a year after the petitioner was born, there was no presumption that the father was not still a citizen of the United States.

While, of course, the Government need not rely solely upon the *presumptive* intent created by the statute and the treaty, if an *actual* intent on the part of the father did, in fact, exist to expatriate himself as early as October 6, 1908, we are not satisfied that such was the case. True, the father said in his affidavit made in 1929, "that he left the United States in November, 1907, and has since permanently resided" in Norway. This may be construed as tantamount to saying that he *never* expected to return to the United States from the very moment he landed in Norway in 1907. But we are unwilling so to construe it, without more, since such a construction would completely preclude petitioner from citizenship under the Act of March 2, 1907, and the treaty.

In support of our conclusion, it is to be noted that, from the opinion of the State Department, placed in evidence, had petitioner's father, at the time of petitioner's birth in 1908, or as late as November, 1909, applied, *without more,* at the appropriate United States Consulate in Norway for an American passport to return to the United States, such would have been granted him, thus recognizing his still existing American citizenship. This conclusion is borne out by the following contained in the opinion rendered by the Secretary of State to the Attorney General under date of February 12th, 1941, relative to the citizenship status of the present petitioner: "Article III of the Protocol to the Naturalization Treaty between the United States and Sweden and Norway has been construed ·by the ·Department of State in the past to mean that when it is clear that a naturalized American citizen has returned to Sweden or Norway with the intent to renew his residence in such country and without the intent to return to the United States, he must be considered to have renounced his naturalization in the United States

immediately upon his arrival in such country. However, *when it is not clear whether upon the arrival of such a person in his former country he had the intent to renew his residence therein and not to return to the United States, it has been the policy of the Department of State not to consider that the naturalization of the individual in the United States has been renounced,* but when his residence in such foreign country extends to and beyond a period of two years, there arises against him under the treaty a presumption that his residence in such foreign country is permanent and that he does not intend to return to the United States, and the burden is shifted to such individual to establish that upon his return to his former country of allegiance he did not intend to renew his residence therein and that he maintains an intention of returning to the United States." (Italics inserted.) Furthermore, it cannot be said with any certainty that, had petitioner's father made such application for an American passport, he truthfully could not and would not at the time have declared that his intention was still to remain an American citizen.

 While it is true that petitioner's right to citizenship is derivative in that it must stand or fall upon his father's status and not upon his own at the time of birth, nevertheless, we feel that in the present circumstances petitioner should not be and is not required by law to be placed in a less favorable position as respects his assertion of citizenship than are persons born outside the country of *subsequently* naturalized parents. By virtue of R.S. § 2172, 8 U.S.C.A. § 7, and Section 5 of the Act of March 2nd, 1907, 8 U.S. C.A. § 8, under the former, a foreign-born child dwelling in the United States at the time of the naturalization of the parent automatically becomes a citizen; and under the latter, a foreign-born child not in the United States when the parent is naturalized, becomes a citizen, from the time when, while still a minor, he or she begins to reside permanently in the United States, provided that under both statutes the "dwelling" or "permanent residence" has a lawful inception. Boyd v. Thayer (Boyd v. State of Nebraska), 143 U.S. 135, 12 S.Ct. 375, 36 L.Ed. 103; United States v. Tod, 2 Cir., 297 F. 385, certiorari granted, 264 U.S. 580, 44 S.Ct. 454, 68 L.Ed. 859, and certiorari dismissed, 267 U.S. 607, 45 S.Ct. 229, 69 L.Ed. 811.

The latter statute was amended by the Act of May 24th, 1934, 8 U.S.C.A. § 8, adding a provision that the citizenship of a minor child shall begin five years after the time such child begins to reside permanently in the United States. The amendment also used the words "the father or the mother" by way of clarification of the intent of Congress, instead of merely the word "parents" or "parent". These sections have been further amended, clarified and consolidated under the Nationality Act of 1940 as follows, 8 U.S. C.A. § 714: "A child born outside of the United States of alien parents, or of an alien parent and a citizen parent who has subsequently lost citizenship of the United States, becomes a citizen of the United States upon fulfillment of the following conditions:

"(a) The naturalization of both parents; or

"(b) The naturalization of the surviving parent if one of the parents is deceased; or

"(c) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents; and if—

"(d) Such naturalization takes place which such child is under the age of eighteen years; and

"(e) such child is residing in the United States at the time of the naturalization of the parent last naturalized under subsection (a) of this section, or the parent naturalized under subsection (b) or (c) of this section, or thereafter begins to reside permanently in the United States while under the age of eighteen years."

 To cause the loss of citizenship acquired by persons born *within* the United States and subject to its jurisdiction, in the absence of Treaty or statute having that effect, there must be voluntary action and such action cannot be attributed to a minor whose removal to another country by his parents is beyond his control and who, during minority, is incapable of making a binding choice. The Supreme Court has quite recently so decided in Perkins v. Elg, 307 U.S. 325, 59 S.Ct. 884, 83 L.Ed. 1320. There it was held that, as to a child born in New York of naturalized Swedish parents, the mere fact that she may have acquired Swedish citizenship by virtue of operation of Swedish law on resumption of that citizenship by

her parents, did not compel the conclusion that she had lost her own citizenship acquired under the law of the United States. Since the person claiming citizenship in that case was born in the United States, sections 6 and 7 of the Act of March 2nd, 1907, with which we are here concerned, were not directly involved in that case. However, section 2 of that Act, 8 U.S.C.A. § 17, creating the presumption against citizenship after two years' foreign residence was construed, and the Court held that this section was aimed at voluntary expatriation and was not intended to destroy the right of a native citizen, removed from the United States during minority, to elect to retain the citizenship acquired at birth and to return to the United States for that purpose.

The Court pointed out that it has long been a recognized principle in this country that if a child born here, is taken, during minority, to the country of its parents' origin where its parents resume their former allegiance, he does not thereby lose his citizenship in the United States, provided that on attaining majority he elects to retain that citizenship and to return to the United States to resume his duties. The Court explained that in such a situation there is no basis, by virtue of either the Treaty or the statute, for invoking the doctrine of expatriation; that instead of being inconsistent with the right of expatriation, the principle which permits the minor, upon attaining majority to elect to retain his American citizenship, conserves and applies the principle. To quote from the opinion (307 U.S. at pages 346, 347, 59 S.Ct. at page 895, 83 L.Ed. 1320): "We do not think that it would be a proper construction of the Act to hold that while it leaves untouched the right of election on the part of a child born in the United States, in case his parents were foreign nationals at the time of his birth and have never lost their foreign nationality, still the statute should be treated as destroying that right of election if his parents became foreign nationals through naturalization. That would not seem to be a sensible distinction. Having regard to the plain purpose of Section 2 of the Act of 1907, to deal with voluntary expatriation, we are of the opinion that its provisions do not affect the right of election, which would otherwise exist, by reason of a wholly involuntary and merely derivative naturalization in another country during minority."

The Court also pointed out the distinction which the statutes make, and which we here fully recognize, between the case of a person born in the United States of foreign parents, and a person born abroad of American parents, and explained that with respect to the latter there was the requirement which we have quoted, and upon which the Government is now relying, 8 U.S.C.A. § 6, that as a condition to receiving the protection of the United States, such person must, upon reaching the age of eighteen, record, at an American consulate, an intention to remain a citizen of the United States and must also take an oath of allegiance to the United States upon attaining his majority. But the two latter things are substantially what the present petitioner, Haaland, has done except that he both made the requisite recordation and took the requisite oath of allegiance shortly prior to reaching his majority, instead of doing the former *upon reaching* the age of eighteen years and the latter *upon reaching* twenty-one. Furthermore, the statute does not say that if these things are not done, citizenship shall be lost, but simply that the doing of them is essential "in order to receive the protection of this Government" by a child who may "continue to reside outside the United States." In other words, we do not construe the statute as meaning that, should the child come to the United States before attaining his majority, as did the present petitioner, with the bona fide intention of permanently residing there, without having recorded his intention and taken the oath of allegiance as stipulated in the statute, he would lose his citizenship.

As we have seen, another part of the Act of March 2nd, 1907, §§ 2, 7, 8 U.S.C.A. § 17, expressly raises a presumption that any naturalized citizen who has resided for two years in the foreign state from which he came, thereby ceases to be an American citizen. Yet, in Camardo v. Tillinghast, 1 Cir., 29 F.2d 527, it was held that the part of the Act just referred to does no more than fix the length of time beyond which our Government will not extend *protection* to its naturalized citizens residing abroad; and that, notwithstanding this part of the statute, citizenship is still retained upon the individual returning to the United States *after* two years, with the bona fide intention of permanently residing here.

When the present petitioner applied for his American passport in 1929, recorded his intention to become a resident and remain a citizen of the United States, took the oath of allegiance, and was then given his American passport, it was reasonable for him to assume that he had fully complied with the law. His entry into the United States as an American citizen was not questioned for nine years, during all of which time, so far as the testimony discloses, he was law-abiding and was enjoying the privileges of American citizenship, although he did not vote, or register for voting. It has been held that where no record of naturalization can be produced, evidence that a person having the requisite qualifications of citizenship did, in fact, and for a long time exercise various rights belonging to citizens, is sufficient to warrant the inference that he has been duly naturalized. See Boyd v. Thayer, supra. We feel that such holding lends support to our conclusion in the present case.

We are not unmindful of the fact that the burden is upon the petitioner to prove that he has met the requirements of the statute and the treaty. We believe that petitioner has sufficiently met them, for the reasons which we have fully given.

Having thus concluded that petitioner's case is to be governed by the provisions of the Treaty of May 26, 1869, 17 Stat. 809 and the Act of March 2, 1907, and that, by a somewhat liberal interpretation of Sections 6 and 7 of that Act, 8 U.S.C.A. § 6 and of the Treaty to which we believe petitioner is entitled because of the rather peculiar circumstances of his case, and of what the Government has done or failed to do since 1929 when it treated him as an American citizen by issuing him an American passport, he is in fact now an American citizen, we might very properly refrain from saying more, except for the fact that we believe it appropriate to explain why the Act of March 2nd, 1907, and not the Nationality Act of 1940 is applicable, since the latter Act, like the former, does not contravene the Treaty provision, and thus would control because of later enactment, if in fact applicable to the present case.

As already noted, Sections 6 and 7 of the Act of March 2nd, 1907 were amended in 1933 and 1934. By such amendment, the requirements for descent of the rights of citizenship upon the child were made more rigid. We will not, however, analyze the amendment because, as also already indicated, the law was again changed in 1940 and is now embodied in Section 407 of subchapter 4, title 1 of the Nationality Act of 1940, 8 U.S.C.A. § 807, which is as follows: "A person having American nationality, who is a minor and is residing in a foreign state with or under the legal custody of a parent who loses American nationality under section 804 of this chapter, shall at the same time lose his American nationality if such minor has or acquires the nationality of such foreign state: Provided, That, in such case, American nationality shall not be lost as the result of loss of American nationality by the parent unless and until the child attains the age of twenty-three years without having acquired permanent residence in the United States." The conditions under which American nationality is lost by Section 804 (referred to in Section 807, just quoted) include (1) residing continuously for two years in the territory of a foreign state of which he was formerly a national or in which he was born, if he thereby acquires the nationality of such foreign state by operation of its law; and (2) residing continuously for three years in such place, regardless of the effect of foreign law. In addition, the Nationality Act of 1940 provides, Section 401, 8 U.S.C.A. § 801 general means whereby a person who is a national of the United States, whether by birth or naturalization, shall lose his nationality; and one of these means is by "making a formal renunciation of nationality before a diplomatic or consular officer of the United States in a foreign state, in such form as may be prescribed by the Secretary of State."

Thus, it will be seen that if the present law were applicable, petitioner's father, upon the facts as here disclosed, without more, might be treated as still having been an American citizen when petitioner was born in 1908, because up until then, petitioner's father (1) had been residing less than two years in Norway since his return; and (2) had not made formal renunciation of his American nationality as required.

It is true that the present proceeding was not instituted until after the effective date of the present law which was ninety days after October 14th, 1940, the date of enactment, Section 601, 8 U.S.C.A. § 906, except as respects the prima facie presumption regarding intention in the old law

which, as we have seen, does not affect the present petitioner, but merely his father as to whom the presumption could not become effective until after petitioner was born. Also, while, as heretofore explained, the Nationality Act of 1940 expressly provides that no part of it shall be applied in contravention of the provisions of any treaty or convention to which the United States is a party at the time the Act went into effect, as likewise explained, the only treaty applicable to the present case does no more than raise the same presumption as does the Act of March 2nd, 1907, against the father, and not against the petitioner. Nevertheless, to treat the present law as having superseded the Act of March 2nd, 1907, for the purposes of this particular case, would, we believe, contravene the present law since, as already noted, it provides in Section 347, 8 U.S.C.A. § 747 that it shall not be construed "to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalization or of citizenship, or other document or proceeding which shall be valid at the time this chapter shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, *or any act, thing, or matter, civil or criminal, done or existing, at the time this chapter shall take effect; but as to all such prosecutions, suits, actions, proceedings, acts, things, or matters, the statutes or parts of statutes repealed by this chapter, are hereby continued in force and effect.*" (Italics inserted.) Our conclusion does not "affect the validity of any declaration of intention," because it is the *lack* of sufficient evidence of an *actual* intention not to remain a citizen of the United States on the part of petitioner's father embracing the time in controversy and the fact that the *presumed* intention of the father, the validity of which we fully recognize, does not have sufficient retroactive effect to cover the time when the petitioner was born, which form the basis for our conclusion. Likewise, our conclusion does not affect the validity of any "document or proceeding", but merely the correctness of an act of an administrative department of the Government, which concededly the present petitioner had the right to have judicially reviewed under the old law, just as under the new. However, the question of course still exists whether it can reasonably be said that the Nationality Act of 1940, in view of the phraseology which we have italicised in the saving clause just quoted, was intended to apply to cases such as the present one, where the petitioner's nationality depends upon the effect of such "things or matters" as petitioner's birth; his American residence, and his father's foreign residence and loss of nationality, all of which occurred long prior to the adoption of this Act. In other words, must we say that the present petitioner's status can only be determined in accordance with the requirements of a prior law which was in effect at a time when all of these events had already occurred?

■ We think that such a conclusion is required. Were we dealing with a petition for naturalization, for example, under this Act, the requirement of law in effect when such petition was filed would control, by express language of the Act. § 347, 8 U.S.C.A. § 747. Such is in accordance with usual statutory construction. Also, the Act provides that "Nationality shall not be lost under the provisions of section 804 or 807 of this Act [just analyzed] until the expiration of one year following October 14, 1940: * * *." § 409, 8 U.S.C.A. § 809. And prior to the last mentioned date the present proceeding was begun. But these are express exceptions which do not relate to the present case, whereas the saving clause does.

■ Finally, to make our comparative analysis complete, it is to be noted parenthetically that in 1905 when petitioner's father married, by virtue of the then existing law, his wife, petitioner's mother, became an American citizen by reason of the marriage, the father then being a naturalized citizen. Rev.Stat.1874, § 1994. While, since 1922 an alien by marriage no longer acquires such derivative citizenship, Act of September 22nd, 1922, 8 U.S.C.A. § 10, the Nationality Act of 1940, in enumerating the persons who shall be nationals and citizens of the United States at birth, includes "A person born outside of the United States and its outlying possessions of parents both of whom are citizens of the United States and one of whom has resided in the United States or one of its outlying possessions, prior to the birth of such person; * * *." Sec. 201, 8 U.S.C.A. § 601(c). So, the present petitioner would, in view of our factual conclusions, appear to meet this definition. The Act further provides that "the loss of nationality under this chapter shall result solely from the performance by a national of the acts or fulfillment of the conditions specified in

this chapter." § 408, 8 U.S.C.A. § 808. However, nothing further need be said by way of explaining why such provisions as these in the present law are not applicable to the present case.

An order will be entered annulling the ruling of the Department of Justice, and declaring the present petitioner to be a citizen of the United States.