## SCHAUFUS v. ATTORNEY GENERAL OF UNITED STATES.

### No. 1523.

District Court, D. Maryland.
May 7, 1942.

Webster C. Tall and Francis A. Michel, both of Baltimore, Md., for petitioner.

Bernard J. Flynn, U. S. Atty., of Baltimore, Md., for Attorney General.

WILLIAM C. COLEMAN, District Judge.

This is a suit against the Attorney General of the United States for a declaratory judgment that the petitioner, Henry Sidney Schaufus, is a citizen of the United States, brought pursuant to the provisions of Section 503 of the Nationality Act of 1940, 8 U.S.C.A. § 903.

Most of the pertinent facts have been stipulated into the case by agreement of counsel. Other facts, some of which are pertinent, appear in the rather lengthy testimony of the petitioner. Suffice it to take from the stipulation and this testimony the following chronology respecting the petitioner: His father was born in Denmark in 1862 and emigrated to the United States when he was thirty-seven years old, that is, in 1889, and seven years later, that is, in 1896, he was naturalized in St. Louis, Missouri, where three years previously he had married a native citizen of Germany. The father, accompanied by the mother, returned to Denmark in 1899 and the following year they went to Germany where, in the same year, the present petitioner was born, that is, on October 9th, 1900. Two years later, petitioner was brought to this country by his parents, but three years after that, that is, in 1905, they returned with

him to Germany and neither his father nor his mother ever again returned to this country. In 1917 petitioner's father became a German citizen, and died in Germany in 1938. During the petitioner's minority he traveled with his parents to different European countries, but Germany remained his and their domicile. It was there he received both his general and technical education and was employed. Commencing in 1921, he made repeated efforts to obtain a German passport to come to the United States, but was unsuccessful until 1927. He never made any claim that he was an American citizen, but desired to come to America for the purpose of accepting a position which had been offered him here.

Arriving in this country in 1927, petitioner filed, in the same year, a declaration of intention to become an American citizen. But he allowed his rights under this petition to expire after seven years through failure to take the necessary subsequent steps for naturalization. In December, 1934, he left this country as a German subject and spent approximately fifteen days in Germany, returning to the United States in January, 1935, on a re-entry permit. He made no further attempt to become naturalized until January 28th, 1939, when he again petitioned to be naturalized. Proceedings under this petition are still pending. He has resided in Maryland since 1929, and has registered as an alien in compliance with the provisions of the Alien Registration Act of 1940, 8 U.S.C.A. §§ 451–459. On December 9th, 1941, following the state of war with Japan and Germany, petitioner was arrested and detained for fifteen days by the Federal Bureau of Investigation for examination and was then given his liberty, conditioned upon periodically reporting to the local Bureau of Immigration and Naturalization, —a restriction such as was imposed upon others having a like apparent enemy alien status. Such action is claimed by petitioner to have been in derogation of his constitutional rights as an American citizen.

Petitioner claims that he has been an American citizen from birth because of the previous naturalization of his father. In support of this contention he relies upon Act March 2, 1907, §§ 6, 7 as amended in 1933 and 1934, 8 U.S.C.A. § 6, as recently construed by this court in Haaland v. Attorney General of United States, D.C., 42 F.Supp. 13, 16. This statute is as follows: "All children born out of the limits and jurisdiction of the United States, whose

fathers may be at the time of their birth citizens of the United States, are declared to be citizens of the United States; but the right of citizenship shall not descend to children whose fathers never resided in the United States. All such children who continue to reside outside the United States shall, in order to receive the protection of this Government, be required upon reaching the age of eighteen years to record at an American consulate their intention to become residents and remain citizens of the United States and shall be further required to take the oath of allegiance to the United States upon attaining their majority. Duplicates of any evidence, registration, or other acts required by this section shall be filed with the Department of State for record." By amendments in 1933 and 1934, Executive Order No. 6166, Sec. 14, June 10, 1933, and Act of May 24, 1934, Chap. 344, Sec. 1, 48 Stat. 797, 8 U.S.C.A. § 6, the requirements for descent of the right of citizenship upon the child were made more rigid, and the statute was repealed by the Nationality Act of 1940, 8 U.S. C.A. §§ 601(c), 713 and 807.

■■ The Nationality Act of 1940 expressly declares that nationality already lawfully acquired is not lost, and nationality already lost is not restored by the repeal, 8 U.S.C.A. Sec. 904. Also, it provides, Section 347, 8 U.S.C.A. § 747, that it shall not be construed "to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalization or of citizenship, or other document or proceeding which shall be valid at the time this chapter shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any act, thing, or matter, civil or criminal, done or existing, at the time this chapter shall take effect; but as to all such prosecutions, suits, actions, proceedings, acts, things, or matters, the statutes or parts of statutes repealed by this chapter, are hereby continued in force and effect." In view of the phraseology in the saving clause which we have just quoted, we do not think it can reasonably be said that the Nationality Act of 1940 was intended to apply to cases such as the present one where the time of petitioner's birth, which occurred long prior to the adoption of this act, is one of the basic factors in a determination of his present citizenship status. In other words, we believe that petitioner's status must be determined in accordance with the requirements of such law or laws as were in effect

at the time this and subsequent related events occurred. The Act of March 2, 1907, from which the second and third sentences of Section 6 of Title 8 U.S.C.A., above quoted, are derived, was not in effect at the time of petitioner's birth which, as we have seen, occurred in 1900. However, the first and more important sentence of that section of the act is taken from the Act of February 10, 1855, c. 71, sec. 1, 10 Stat. 604, R.S. Sec. 1993, and from the Act of April 14, 1802, c. 26, sec. 4, 2 Stat. 155, and remained in effect until re-enacted as section 6 of the Act of March 2, 1907. See Weedin v. Chin Bow, 274 U.S. 657, 47 S. Ct. 772, 71 L.Ed. 1284.

There are other provisions in the statute of March 2, 1907, 34 Stat. 1229, which must be taken into account in the present inquiry, namely, sections 2 and 7 of that Act (which appear as the last three sentences of Section 17 of 8 U.S.C.A.), even though also repealed by the Nationality Act of 1940, Secs. 401, 404, 409, 8 U.S.C.A. §§ 801, 804, and 809, as amended October 16, 1941. Section 17 is as follows:

"Any American citizen shall be deemed to have expatriated himself when he has been naturalized in any foreign State in conformity with its laws, or when he has taken an oath of allegiance to any foreign State.

"When any naturalized citizen shall have resided for two years in the foreign State from which he came, or for five years in any other foreign State it shall be presumed that he has ceased to be an American citizen, and the place of his general abode shall be deemed his place of residence during said year. Such presumption may be overcome on the presentation of satisfactory evidence to a diplomatic or consular officer of the United States, under such rules and regulations as the Department of State may prescribe. Duplicates of any evidence, registration, or other acts required by this section shall be filed with the Department of State for record."

■ This part of the Act of March 2, 1907, was new. We are immediately concerned with it only in so far as it may affect the citizenship of petitioner's *father*. It is to be noted that it was not enacted until after petitioner was born. But even assuming that it is to be given retroactive effect, it cannot have had the effect of taking from the father his citizenship prior to petitioner's birth because the father had not been in Germany a year when his son was

born there in 1900, that is, not long enough to have had the statutory presumption of intent to expatriate himself created against him. While, of course, the presumption created by the statute is not important if an earlier actual intent to expatriate existed on the part of the father, we must conclude that there is an absence of proof of *any* intent, either actual or presumptive, on his part to expatriate himself prior to 1900. The father had only left the United States a year before, had returned again two years later and had remained until 1905. From these facts, and from the absence of any proof with respect to what the father intended to do prior to 1905 when he definitely settled in Germany, we are disposed to give to the present petitioner the benefit of any doubt that may surround this question. We, therefore, conclude that the father was an American citizen at the time petitioner was born, and the father having also met the further requirement of Section 6 of 8 U.S.C.A., as to American residence, it follows that his American citizenship descended upon his son, the petitioner, at birth. But, of course, this does not settle the principal question here at issue, namely, the present status of the petitioner, which can only be done by analyzing and giving proper effect to petitioner's own conduct and residence in Germany during subsequent years, and thereby determining whether he has lost all right still to claim American citizenship.

As already pointed out, except for a visit of three years in the United States where he was brought with his parents in 1902 when only two years old, petitioner never returned to the United States again until 1927; that is to say, from 1905, when, at the age of five he was taken back to Germany by his parents, for twenty-two years he made his home in Germany. His father became a German citizen in 1917. Furthermore, there is absolutely nothing in the petitioner's own testimony from which it may reasonably be inferred that he knew what his status had been at birth or that he *ever* considered himself as having derivative American citizenship from his father until a few months ago, when he was apprised of the decision of this court in Haaland v. Attorney General of United States, supra. Of course, mere ignorance of his status at birth would not alone preclude him from still asserting it, provided he had not lost it by what he had done meanwhile. But petitioner's attitude after arrival in this country in 1927 confirms our conclusion. In that year he petitioned, as a German citizen, to be naturalized, and after allowing his rights under such petition to expire through lapse of time, he filed another petition in 1939, with the same sworn declaration as to his nationality. In addition, he never applied for an American passport but on the contrary, when he paid a short visit to Germany in 1934-35, he did so as a German citizen, and he has just recently registered as a German citizen pursuant to the provisions of the Alien Registration Act of 1940.

Thus, the facts in the present case are distinctly different from those in Haaland v. Attorney General of United States, supra. The basis of the decision in that case, wherein a declaratory judgment was given that the petitioner was an American citizen by derivative right from his father, was that the petitioner came within the provisions of 8 U.S.C.A. § 6. As has been seen, those provisions are (1) that all children born outside of the United States, whose fathers at the time of their birth are (a) American citizens and (b) have had some period of residence in the United States, are themselves citizens of the United States; and (2) that such children, if they continue to reside outside of the United States, shall be required, in order to receive the protection of this Government, upon reaching the age of eighteen years, to record at an American consulate their intention to become residents and remain citizens of the United States, and shall be further required to take the oath of allegiance to the United States upon reaching their majority. These things were substantially what Haaland did, because he both made the requisite recordation and took the requisite oath of allegiance shortly prior to reaching his majority. Furthermore, it is to be noted that the statute does not say that if the requisite declaration of intention and oath of allegiance are not made, citizenship shall be lost, but simply that the doing of these things is essential in order that a minor who may continue to reside outside of the United States, may receive the protection of this Government. In other words, in the Haaland case, we did not, nor do we now, construe the statute as meaning that should a minor, with Haaland's status, come to the United States before attaining his majority with a bona fide intention of residing here without having recorded his intention and taking the oath of allegiance precisely as as stipulated in the statute, he would lose

his citizenship. In the present case Schaufus had resided in Germany from birth, with the exception of a brief absence when a mere baby, until he was twenty-seven years old. His parents had established themselves there as German citizens; he received his education there, and then went to work there, conforming, as a German citizen, to the laws and customs of the country. So there is nothing whatsoever to indicate that, during the six years that he remained in Germany subsequent to his attaining his majority, he ever gave the slightest evidence of claiming, or intending to claim, that he was an American citizen. There is the further distinguishing fact in the Haaland case that Haaland's entry into the United States as an American citizen upon an American passport was not questioned for nine years after such entry.

■ Petitioner's counsel also place reliance upon the recent case of Perkins v. Elg, 307 U.S. 325, 59 S.Ct. 884, 83 L.Ed. 1320. There, it was held that a child born in the United States of alien parentage and taken, during minority, to the country of her parents' origin, where they resume their former allegiance, loses her United States citizenship unless, upon attaining majority, she elects to retain that citizenship and to return to the United States to assume citizenship duties. It will thus be seen that the facts are distinctly different from those before us. That case involved the interpretation to be given to Section 2 of the Act of March 2, 1907, that is, to the first paragraph of Section 17 of 8 U.S.C.A., which we have previously quoted, as well as the construction of a Treaty between the United States and Sweden, and of the Swedish Nationality Law. But nowhere in this decision or in any others of which we are aware, is there any indication that the presumption that there has been expatriation. shall be less great in regard to a child born abroad of American parentage than in the case of a child born in the United States. In the Elg case, the Supreme Court, after pointing out that Congress, by the Act of July 27, 1868, 15 Stat. 223, 8 U.S.C.A. §§ 13–15, had declared that "the right of expatriation is a natural and inherent right of all people" defined .expatriation as "the voluntary renunciation or abandonment of nationality and allegiance." 307 U.S. 334, 59 S.Ct. 889, 83 L.Ed. 1320. The court explained that it had no application to the removal from this country of a native citizen during minority, who returns here upon his majority, and elects to remain and to retain his American citizenship. Thus, it will be seen that the facts in the two cases are in ʕno sense similar. As stressed in the Elg decision, expatriation is a matter of intent on the part of the person concerned, which must be shown by some express act. In the present case, we believe that the petitioner's entire course of conduct after ·he attained his majority and continued to reside in Germany, is conclusive evidence of an intent to claim and to exercise German citizenship.

■ We have already construed Sections 2 and 7 of the Act of March 2, 1907, 8 U.S.C.A. § 17, in relation to its effect upon the status of the father of the petitioner. But these provisions, while not expressly designed to cover, would nevertheless appear to be applicable to such a case as the son's, that is, the present petitioner's, at least after he became of age, since they expressly embrace any naturalized citizen, and the present petitioner, as we have found, derived his American citizenship at birth from his father who had, in turn, obtained his citizenship by naturalization. There are only two types of citizens: those who are native born and those who are naturalized. There is no basis for differentiating between the status of those who are naturalized by the court procedure prescribed by Congress and embraced in the statutes with which we are not here concerned, and those who become naturalized by a derivative right from their parent or parents. In United States v. Wong Kim Ark, 169 U.S. 649, 654, 702, 703, 18 S.Ct. 456, 459, 42 L. Ed. 890 the Supreme Court said:

"The constitution of the United States, as originally adopted, uses the words 'citizen of the United States' and 'natural-born citizen of the United States.'
* * * * * ˋ *
"The constitution nowhere defines the meaning of these words, either by way of inclusion or of exclusion, except in so far as this is done by the affirmative declaration that 'all persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States.' Amend. art. 14. In this, as in other respects, it must be interpreted in the light of the common law, the principles and

history of which were familiarly known to the framers of the constitution.

\* \* \* \* \* \*

"The fourteenth amendment of the constitution, in the declaration that 'all persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside,' contemplates two sources of citizenship, and two only,—birth and naturalization. Citizenship by naturalization can only be acquired by naturalization under the authority and in the forms of law. But citizenship by birth is established by the mere fact of birth under the circumstances defined in the constitution. Every person born in the United States, and subject to the jurisdiction thereof, becomes at once a citizen of the United States, and needs no naturalization. A person born out of the jurisdiction of the United States can only become a citizen by being naturalized, either by treaty, as in the case of the annexation of foreign territory, *or by authority of congress, exercised either by declaring certain classes of persons to be citizens, as in the enactments conferring citizenship upon foreign-born children of citizens,* or by enabling foreigners individually to become citizens by proceedings in the judical tribunals, as in the ordinary provisions of the naturalization acts." (Italics inserted).

▉ Thus, it seems clear that the present petitioner has lost the derivative citizenship which he acquired at birth from his father, unless he has satisfied the requirements of Sections 2 and 7 of the Act of March 2, 1907. Obviously, enough has been said to indicate that he has not satisfied these requirements. Petitioner claims never to have taken a German oath of allegiance. But whether such was, in fact, necessary in order for him to have acquired German nationality, as well as questions involving the doctrine of dual nationality, need not concern us, because foreign naturalization and taking an oath of allegiance to a foreign state are not, by the statute, the exclusive conditions precedent to expatriation. By the statute, the presumption arises that when a naturalized citizen has resided for two years in the foreign state from which he came, or for five years in any other foreign state, he has ceased to be an American citizen and the place of his general abode shall be deemed his place of residence. The present petitioner resided almost continuously in Ger-

many, where he was born, for twenty-seven years, and at no time during that long period did he do anything whatsoever to indicate that he considered himself as other than a German citizen. The statute sets out the manner in which the presumption of expatriation may be overcome. Clearly, a mere after-thought, created by personal expediency, cannot be enough. Such would make American citizenship a mere travesty instead of the high privilege that it is, and must always remain. The present case is totally devoid of any evidence, such as is required, ever having been submitted by petitioner, or of any intention ever having existed on his part, to submit it. See Cummings v. Isenberg, 67 App.D. C. 17, 89 F.2d 489; certiorari denied 301 U.S. 682, 57 S.Ct. 783, 81 L.Ed. 1341; Isenberg v. Cummings, 301 U.S. 713, 57 S. Ct. 921, 81 L.Ed. 1365. Thus it is immaterial, for the purposes of the present case, whether we treat Germany as "the foreign State from which he [petitioner] came," or as "any other foreign State." In other words, the presumption has not been overcome whether we treat it as having arisen five years or two years after petitioner became twenty-one.

It is interesting to note that although, for the reasons previously stated, the Nationality Act of 1940 is not applicable to the present case, were its provisions applicable they would seem to require the same conclusion which we now reach because Section 407 of that Act, 8 U.S.C.A. § 807, provides that "A person having American nationality, who is a minor and who is residing in a foreign state with or under the legal custody of a parent who loses American nationality under section 804 of this chapter, shall at the same time lose his American nationality if such minor has or acquires the nationality of such foreign state: Provided, That, in such case, American nationality shall not be lost as a result of loss of American nationality by the parent unless and until the child attains the age of twenty-three years without having acquired permanent residence in the United States." In the present case Schaufus acquired no residence in the United States until he was in his twenty-seventh year.

▉ Finally, although not specifically suggested at the hearing by counsel for the present petitioner, it might nevertheless be argued that the provisions of Section 2172, Revised Statutes, may be applicable to the

68

present petitioner's case and give support to his claim of now being a United States citizen. These provisions became law by the Act of April 14, 1802, chapter 28, sec. 4, 2 Stat. 155, and are as follows, 8 U.S.C. A. § 7: "The children of persons who have been duly naturalized under any law of the United States, or who, previous to the passing of any law on that subject, by the Government of the United States, may have become citizens of any one of the States, under the laws thereof, being under the age of twenty-one years at the time of the naturalization of their parents, shall, if dwelling in the United States, be considered as citizens thereof; and the children of persons who now are, or have been, citizens of the United States, shall, though born out of the limits and jurisdiction of the United States, be considered as citizens thereof."

Suffice it to say, however, that the first clause of this statute deals with an entirely different type of case from what we have here, namely, with the citizenship of minors who have been born *before* the naturalization of their parents; and the second or last clause of the statute is to be construed as covering cases of foreign-born minors whose parents were citizens of the United States at or previous to the time when such minors were born. While the first clause is prospective in its application, the latter clause is not, that is to say, it only relates to cases where the parents have been citizens prior to the enactment of the clause, namely, April 14, 1802. See Mock Gum Ying v. Cahill, 9 Cir., 81 F.2d 940.

The petition herein must accordingly be dismissed, and the petitioner declared not to be a citizen of the United States.