## GINN v. BIDDLE, Atty. Gen., et al.
### Civil Action No. 4067.

District Court, E. D. Pennsylvania.

May 7, 1945.

Reuben Singer, of Philadelphia, Pa., for complainant.

Gerald A. Gleeson, U. S. Atty., and Charles P. Mirarchi, Asst. U. S. Atty., both of Philadelphia, Pa., for the Government.

KALODNER, District Judge.

This is an action to declare the citizenship of the complainant, Ben J. Ginn. The original complaint also sought a decree enjoining the defendants from "asserting and/or ruling that he, complainant, is not an American citizen and from refusing to issue him a certificate of derivative citizenship." The complaint is based upon admitted allegations that Ben Ginn, in February, 1944, applied for a certificate of derivative citizenship pursuant to Section 339 of the Nationality Code of 1940, 54 Stat. 1160,[1] 8 U.S.C.A. § 739, claiming to have derived his citizenship as a minor through the naturalization of his father on November 9, 1928. Following hearings, the Commissioner of the Immigration and Naturalization Service denied the application on the ground that complainant had failed to establish the fact that he was a minor at the time his father was naturalized.

That part of the complaint praying for injunctive relief was withdrawn at the time of trial, and a stipulation was entered to strike the name of Karl I. Zimmerman, District Director of the Immigration and Naturalization Service, from the record as a defendant. The only question on the merits that remains, therefore, is one of fact: Whether, on November 9, 1928, the complainant was a minor.

The Service, however, has raised a preliminary question as to the proper act under which this case may be prosecuted. The complaint seeks to establish his remedy under the Federal Declaratory Judgment Act, 48 Stat. 955 (1934), 28 U.S.C.A. § 400, "and/or" under Section 503 of the Nationality Code of 1940, 54 Stat. 1171, 8 U.S.C.A. § 903. The latter act specifically permits any person denied the rights of citizenship by a governmental department or agency on the ground that he is not a citizen to institute an action against the head of such department or agency, in the district court for the district in which such

[1] As amended 58 Stat. 4 (Pub.Law 221, Jan. 20, 1944).

person claims a permanent residence, for a judgment declaring him to be a national of the United States.

In naming both statutes, the complainant presumably had in mind the record in the case of Watkins v. Morgenthau, D.C.E.D. Pa., 1944, 56 F.Supp. 529. In that case, however, no question of procedure was raised. Obviously, the complainant wished to proceed under the Declaratory Judgment Act of 1934 because of his original prayer for injunctive relief, for which Section 503 of the Nationality Code apparently does not provide. It is equally clear that he wished the protection of Section 503 of the Nationality Code for the reason that, insofar as the Attorney General is concerned, a challenge to this court's jurisdiction over the person could not succeed under the wording of the Section. See Haaland v. Attorney General, D.C.Md., 1941, 42 F. Supp. 13; Schaufus v. Attorney General, D.C.Md., 1942, 45 F.Supp. 61.

Since the complainant has withdrawn his prayer for additional relief, it is patently immaterial to him which Act is considered appropriate here, but the respondent has devoted a great deal of his brief to denying the propriety of proceeding under the Declaratory Judgment Act of 1934.

The Declaratory Judgment Act was invoked to determine a citizenship question in Perkins v. Elg, 1939, 307 U.S. 325, 59 S.Ct. 884, 83 L.Ed. 1320. That no additional relief is now requested in the instant case does not constitute a bar, since the Act specifically applies "whether or not further relief is or could be prayed." Moreover, the present existence of another adequate remedy does not preclude a judgment for declaratory relief under that Act. Rule 57, Rules of Civil Procedure, 28 U.S. C.A. following section 723c; see also 18 Hughes, Federal Practice, Sec. 25387. Had it been desirable to force the use of Section 503 of the Nationality Code. a challenge should have been made, at the proper time, to this court's jurisdiction over the person. Such a motion was indeed made at the time of trial, but respondent had already answered on behalf of the defendants without raising the question, and hence the motion at that time cannot avail it. It is true that the traditional distinction between general and special appearances was abolished by the Rules of Civil Procedure, Rule 12. Nevertheless, "if the defense of lack of jurisdiction of the person is not raised by motion before answer or in the answer itself it is by the express terms of paragraph (h) of Civil Procedure Rule 12 to be treated as waived, not because of the defendant's voluntary appearance, but because of his failure to assert the defense within the time prescribed by the rules". Orange Theatre Corp. v. Rayherstz Amusement Corporation, 3 Cir., 139 F.2d 871, 874, certiorari denied 1944, 322 U.S. 740, 64 S.Ct. 1057, 88 L.Ed. 1573; and see 1 Moore's Federal Practice (1938), Sections 12.03 and 12.10. There is therefore no reason to preclude procedure here under the Declaratory Judgment Act, and consequently it does not become necessary to drop, as improper parties under Rule 21, all defendants except the Attorney General, as may otherwise be required under Section 503 of the Nationality Code, which limits the remedy thereunder to action against the head of the department or agency.

The issue on the merits may now be considered.

Mr. Ginn, a native of Lithuania, arrived in the United States, as a child, on May 10, 1912, on the steamship "Barcelona". His father, Aaron Hillel Ginn, was naturalized as a citizen of the United States on November 9, 1928. The complainant eventually entered the employ of the Immigration and Naturalization Service; he served in the Armed forces from May to September, 1942, and upon receiving an honorable discharge, returned to the Immigration and Naturalization Service where, just prior to these proceedings, he held the position of Examiner.

The complainant maintains that he was born on February 27, 1908. It is conceded that if he has successfully carried the burden of proving that as the date of his birth, he is entitled to a judgment declaring him to be a citizen of the United States through the naturalization of his father by virtue of Section 2172, Revised Statutes, then in force,[2] which provided that:

"The children of persons who have been duly naturalized under any law of the United States * * * being under the age of twenty-one years at the time of the naturalization of their parents, shall, if

---

[2] This section was repealed by Section 504 of the Nationality Code of 1940, 54 Stat. 1172, 8 U.S.C.A. § 904, which provides that such repeal should not terminate nationality heretofore granted.

dwelling in the United States, be considered as citizens thereof."

The evidence adduced by the parties is as follows:

On behalf of the complainant, one Samuel Ginn, a teacher, testified that he is the half-brother of the complainant; that at the time Ben Ginn was born he was living in a little town near Rebuk, Lithuania, where Ben was born; that Ben was born in the month of February in 1908; that he officiated at a religious ceremony for Ben eight days after the latter's birth; that he kept records of the religious ceremonies he performed, but that these were destroyed by fire during World War I; that he recalls the year particularly because his daughter was born in the same year in September, and also because 1908 was rare in that it was a leap year in both the Hebrew and English calendars.

One Alex Rubin also testified that he was living in Rebuk, Lithuania, at the time of Ben's birth; that Ben was born in 1908, about six or seven weeks after he, Alex Rubin, was confirmed in January, 1908; that he also attended the religious ceremony for Ben shortly after the latter's birth; and that he recalls the time of Ben's birth because of its proximity to his own confirmation. Mr. Rubin further stated that he was present at the party held for Ben following Ben's confirmation in 1921, when Ben was 13 years old, and that he recalled that year because in 1921 he had made a trip to Europe, and also attended the wedding of Ben's sister.

Three other witnesses also asserted that Ben was confirmed in 1921. Mr. Harry Brodsky, a commercial artist, said he had attended the party following the confirmation, and that he recalls the fact because he was confirmed in the same year, having been prepared for the ceremony by Ben's father. Mr. Adolph Laskin, a schoolteacher, stated that the year of Ben's confirmation was 1921, that he had attended, and that the ceremony was performed by Ben's father. Finally, Jacob S. Cooper, Ben's brother-in-law, testified that he had attended Ben's confirmation in February, 1921, and that he can recall the fact because a few months later, on April 17, 1921, he had married Ben's sister. It may be noted, in passing, that Ben has been living in Mr. Cooper's home since 1933 or 1934.

On behalf of the Immigration and Naturalization Service, there was introduced an original registration card of Temple University Teacher's College which recites that Ben was born on February 27, 1908, and that his father was naturalized in 1927, the year of the registration. This information was supplied by Ben himself. The manifest record of the Ginn family's entrance into this country shows that on May 11, 1912, Aaron Hillel Ginn gave the age of his son, Ben, as five years. The 1920 census records Ben's age as thirteen years, and recites the year of his immigration as 1913. The original records of the Philadelphia public schools show that Ben's date of birth was given as January 12, 1906, and that he entered the Sharswood school on September 16, 1912. An alleged certified copy of this record, which had been in Ben's possession, gives the date of his birth as February 12, 1908, and the date of entry into the school as September 16, 1913. Complainant denied any knowledge of altering this copy, although the fact of alteration is apparent.

It was conceded that the application for citizenship of Ben's father notes February 27, 1908, as Ben's birth date. Aaron Hillel Ginn's naturalization certificate, which, according to the record, is prepared from the application, recites Ben's age as twenty. The certificate is dated November 9, 1928.

Respondent further succeeded in showing that the testimony of Samuel Ginn relating to his own birthdate and to the dates of birth of his two daughters does not agree with the statement in his application for citizenship. The witness testified that the dates given in his application were wrong, and that he knew they were wrong when he supplied them.

■ Having given careful consideration to all the evidence, oral and documentary, I am of the opinion that the complainant has sustained the burden of establishing that he was born on February 27, 1908.

Leaving out the testimony of the complainant, even though it is conceded that testimony as to one's own age is competent, there remains the testimony of two witnesses, Samuel Ginn and Alex Rubin, who were able to testify concerning the date of birth of the complainant of their own knowledge, and with persuasive reasons for their ability to recollect at this time. As to Samuel Ginn, his conduct on the stand rules out any argument that the discrepancy between the dates given on the stand and those contained in his petition for naturalization is due to "incipient senility".

I give full credence to the statements of Samuel Ginn and Alex Rubin. Furthermore, Rubin, Cooper, Laskin and Brodsky testified that Ben was confirmed in 1921. Each of these men has a satisfactory reason for being able to recall this event, and there is no good reason for not crediting their testimony. The religious ceremony of confirmation, known as the "barmitzvah", takes place only when the Jewish boy reaches his thirteenth year. Such evidence is clearly relevant, having a logical relation to the date of birth, and affording a reasonable inference upon the matter in issue.

The documentary evidence, while it tends to support the complainant's position, seems less reliable. Although the Temple University records disclose Ben's date of birth as February 27, 1908, it also contains the untrue statement that Ben's father was naturalized in 1927. The census record demonstrates its own unreliability in that it recites the year of Ben's immigration as 1913, whereas it is undisputed that the correct year is 1912. While the public school record gives Ben's date of birth as January 12, 1906, it is nevertheless susceptible to the suggestion that his parents fixed a date which would permit him to enter school prior to his sixth birthday. Finally, the naturalization certificate of Ben's father states that Ben was twenty years old then, but this certificate was prepared from an application which was written in Ben's handwriting. Nevertheless, they are in support of the complainant: a letter of November 28, 1928, which Ben wrote to the Service asking for evidence of his citizenship because he had applied for a position as Junior Stenographer, is of little value to the respondent as an attack on the credibility of the information contained in Ben's father's application for citizenship in the absence of evidence concerning the date of execution of the application, for the application may have been made before Ben had any idea of its importance to him.

In consonance with the above, I therefore make the following

## Findings of Fact

1. The complainant, Ben J. Ginn, was born in Rebuk, Lithuania, on February 27, 1908.

2. The complainant's father, Aaron Hillel Ginn, was naturalized as a citizen of the United States on November 9, 1928.

3. The complainant, Ben J. Ginn, was a minor on November 9, 1928.

Accordingly, I state the following

## Conclusions of Law

1. The complainant, Ben J. Ginn, derived his citizenship through the naturalization of his father, Aaron Hillel Ginn, on November 9, 1928, at which time complainant was a minor.

2. The complainant, Ben J. Ginn, is therefore a citizen of the United States of America, and is entitled to all the rights and privileges of a citizen of the United States of America.

An order may be submitted in accordance with this Opinion.